**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 1:17-CR-45-TLS-PRC |
| | ) | |
| DORRION JEFFERSON, | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

This matter is before the Court on Defendant's Motion to Sever [DE 78], filed by Defendant

Dorrion Jefferson on October 22, 2018. The Government filed a response on November 1,2018.

Defendant has not filed a reply, and the time to do so has passed.

**PROCEDURAL HISTORY**

Defendant Dorrion Jefferson is charged by indictment with counts of distribution of a

controlled substance (Counts 1 and 2 of the Indictment), in violation of 21 U.S.C. § 841(a)(1), and

with one count of possession with intent to distribute a controlled substance (Count 3 of the

Indictment), in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Count 3 of the Indictment is

also brought against co-defendant Mauricio Saldana Ramirez. The offenses are alleged to have

occurred between June 22, 2017, and August 3, 2017.

**ANALYSIS**

Pursuant to Federal Rule of Criminal Procedure 14(a), Defendant Dorrion Jefferson asks the

Court to sever his trial from that of his co-defendant, Mauricio Saldana Ramirez. Jefferson believes

that, pertaining to Count 3 of the Indictment, the government will allege that Jefferson and Ramirez

possessed with intent to distribute four ounces of methamphetamine. Jefferson contends that the

government will allege that Jefferson aided Ramirez in the possession and attempted distribution

of the methamphetamine or that Ramirez so aided Jefferson.

Federal Rule of Criminal Procedure 8(b) provides that an indictment "may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. P. 8(b). The rule further provides that "[t]he defendants may be charged in one or more counts together or separately" and that "[a]ll defendants need not be charged in each count." *Id*. "There is a preference in the federal system for joint trials of defendants who are indicted together. Joint trials 'play a vital role in the criminal justice system.' They promote efficiency and 'serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.'" *Zafiro v. United States*, 506 U.S. 534, 537 (1993). This interest is strong when "the charge against all the defendants may be proved by the same evidence and results from the same series of acts." *United States v. Ras*, 713 F.2d 311, 315 (7th Cir. 1983) (internal quotation marks omitted) (quoting *United States v. McPartlin*, 595 F.2d 1321, 1333 (7th Cir. 1979)).

Jefferson does not dispute that he and Ramirez are properly joined under Rule 8(b). Rather, Jefferson argues for severance under Rule 14(a), which provides that, if the joinder of offenses or defendants "appears to prejudice a defendant or the government," the court "may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Fed. R. Crim. P. 14(a). It is the defendant's burden to demonstrate a strong showing of prejudice. *United States v. Moya-Gomez*, 860 F.2d 706, 767-68 (7th Cir. 1988). The Court should grant severance to properly joined defendants "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539. "A defendant, however, is not entitled to severance simply because his chances of acquittal are higher in a separate trial." *United States v.*

*McKissick*, 908 F.3d 252, 276 (7th Cir. 2018) (citing *Zafiro*, 506 U.S. at 540); *Moya-Gomez*, 860

F.2d at 768. "[L]ess drastic measures, such as limiting instructions, often will suffice to cure any risk

of prejudice." *Zafiro*, 506 U.S. at 540. The determination of the risk of prejudice and any necessary

remedy is left to the sound discretion of the district court. *Id*. at 539; *United States v. Rollins*, 301

F.3d 511, 517-18 (7th Cir. 2002). The Court considers in turn each of Jefferson's arguments for

severance.

First, Jefferson contends that his right to a fair trial is prejudiced because he and Ramirez

have markedly different degrees of culpability and because of the disparities in the incriminating

evidence that will be presented related to each defendant. *See Zafiro*, 506 U.S. at 539. Jefferson

argues that he never "actually possessed" the methamphetamine, noting that, according to the

evidence presented by the government in discovery, at all times the methamphetamine was

possessed by Ramirez, and that during a stop during the drive (Jefferson was the driver) Ramirez

procured two additional ounces of methamphetamine. Jefferson further notes that he does not speak

Spanish and would not have understood any phone conversations by Ramirez in Spanish to procure

the additional two ounces of methamphetamine. Last, Jefferson contends that, based on discovery,

Jefferson had just met Ramirez and did not know anything about Ramirez's background. Thus,

Jefferson argues that he would be prejudiced by a joint trial in light of these disparities.

The government responds that Jefferson has understated his degree of culpability. The

government explains that the information provided in discovery shows that Jefferson was under

investigation for drug related activities for several months by the Bureau of Alcohol, Tobacco, and

Firearms and Explosives ("ATF"). The government states that the evidence, in the form of recorded

calls, text messages, surveillance, and audio/video recordings, demonstrates that on June 22, 2017,

and on July 20, 2017, Jefferson delivered to an undercover ATF agent an ounce of cocaine, a Schedule II Controlled Substance. The government represents that the evidence further demonstrates via recorded calls, text messages, and audio/video recordings, that Jefferson coordinated the delivery of four ounces of methamphetamine to an undercover ATF agent and that Jefferson communicated via recorded phone calls and text messages with an undercover ATF agent to arrange the delivery of the methamphetamine on August 3, 2017. The government further describes evidence showing Jefferson leaving a residence in his rented Toyota Camry on August 3, 2017, driving to a location where he picked up Ramirez, driving with Ramirez to another location, communicating with the undercover ATF agent, giving the agent the address to meet, telling the undercover ATF agent that he would be there in five minutes, and then being stopped in the vehicle with Ramirez and the methamphetamine by agents a block from the meeting location.

As noted by the government, Jefferson is charged in Count 3, along with Ramirez, with possession with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. As to Count 3, 18 U.S.C. § 2 provides that a person who "aids, abets, counsels, commands, induces or procures" the commission of an offense against the United States is punishable "as a principal." 18 U.S.C. § 2(a). A person constructively possesses contraband, even when the person did not "'actually have immediate, physical control of the'" contraband when the person "had the 'power and intent' to exercise 'ownership, dominion, authority, or control' over the contraband." *United States v. Rebolledo-Delgadillo*, 820 F.3d 870, 875 (7th Cir. 2016) (quoting *United States v. Morris*, 576 F.3d 661, 666 (7th Cir. 2009); *United States v. Campbell*, 534 F.3d 599, 606 (7th Cir. 2008)). Thus, Jefferson's argument that he is less culpable than Ramirez because he never "actually possessed" the methamphetamine is challenged by the government's recitation of

the facts, which show that Jefferson and Ramirez aided and abetted each other in the possession with intent to distribute methamphetamine. This same evidence would be admissible against Jefferson whether he is tried jointly with Ramirez or individually. Having offered no reply, Jefferson has not shown a markedly different degree of culpability or a disparity in the evidence that would prejudice his right to a fair trial.

While there can be some risk of heightened prejudice when there are "markedly different degrees of culpability," the differences identified by Jefferson in this case can be cured with proper limiting instructions, as "juries are presumed to follow their instructions." *Zafiro*, 506 U.S. at 539, 541 (quoting *Richardson*, 481 U.S. at 211). The jury can be instructed that the government has the burden of proving beyond a reasonable doubt that each defendant committed the crimes with which he is charged. *Id*. The jury can further be instructed to give separate consideration to each individual defendant and to each separate charge against him and can be instructed that each defendant is entitled to have his case determined from his own conduct and from the evidence that may be applicable to him. *Id*. (citing *Schaffer v. United States*, 362 U.S. 511, 516 (1960)). Jefferson has not addressed the issue of jury instructions and has not argued that such instructions would be insufficient to cure any prejudice based on any disparity in culpability or the weight of the evidence. Notably, this is not a case with "many defendants" nor is this case complex. *See id*. at 539 (citing *Kotteakos v. United States*, 328 U.S. 750, 774-75 (1946)). The Court finds that any prejudice from the purported differing degrees of culpability and the disparities in the incriminating evidence is insufficient to warrant severance.

Next, Jefferson argues that he and Ramirez have mutually antagonistic defenses such that "the acceptance of one defendant's defense will preclude the acquittal of the other defendant."

*United States v. Carrillo*, 435 F.3d 767, 778 (7th Cir. 2006). Jefferson states that he will argue the contents of the blue bag were exclusively the property of Ramirez and that he will testify that the contents of the bag were not known to him and that he believed any putative deal was called off. However, "[e]ven a showing that two defendants have 'mutually antagonistic defenses,' that is, that the jury's acceptance of one defense precludes any possibility of acquittal for the other defendant, is not sufficient grounds to require a severance unless the defendant also shows prejudice to some specific trial right." *United States v. McClurge*, 311 F.3d 866, 871 (7th Cir. 2002) (internal quotation marks omitted) (quoting *United States v. Mietus*, 237 F.3d 866, 873 (7th Cir. 2001)); *see also United States v. Plato*, 629 F.3d 646, 650 (7th Cir. 2010) (discussing *Zafiro*, 506 U.S. at 538); *Carillo*, 435 F.3d 767, 778 (7th Cir. 2006) (recognizing that the "mere presentation of mutually antagonistic defenses does not require severance" (citing *Zafiro*, 506 U.S. at 438)).

To attempt to show prejudice to a trial right, Jefferson raises the possibility that, if the government presents statements by Ramirez to law enforcement officials regarding Jefferson's possession of the four ounces of methamphetamine and if Ramirez does not testify, then the introduction of Ramirez's statements would violate Jefferson's rights under the Sixth Amendment's confrontation clause. *See Bruton v. United States*, 391 U.S. 123 (1968). In its response brief, the government clarifies that Ramirez did not provide a statement to law enforcement, and, as a result, the government will not be presenting any statement of Ramirez implicating Jefferson at the joint trial. Therefore, Jefferson has not shown prejudice to a trial right by the defendants' purported mutually antagonistic defenses, and severance is not warranted on this basis. *See Plato*, 629 F.3d at 650 (finding no prejudice when the government voluntarily excluded the co-defendant's

statements incriminating the defendant and the Sixth Amendment confrontation clause "evaporated").

Finally, Jefferson contends that Ramirez's adversarial defense will deny Jefferson a fair trial because Ramirez's counsel will essentially act as a second prosecutor, doubling the evidence presented against Jefferson. *Zafiro*, 506 U.S. at 543-44, 544 n. 3 (Stevens, J., concurring) (citing *United States v. Tootick*, 952 F.2d 1078, 1082 (9th Cir. 1991); *United States v. Romanello*, 726 F.2d 173, 179 (5th Cir. 1984)). Jefferson reasons that, even if the arguments and evidence proffered by Ramirez would be presented against Jefferson by the government whether the trials are separate or joint, there is the possibility that Ramirez will offer additional evidence not offered by the government and the danger of the compounded effect of the presentation of duplicative evidence by Ramirez and the government at each stage of the litigation. Jefferson notes the various ways in which counsel for a co-defendant can become a second prosecutor through zealous representation, opening statements, cross-examination of government and defense witnesses, and closing arguments. Jefferson also reasons that the adversarial defense presented by Ramirez—that Ramirez knew nothing of the contents of the blue bag and that the blue bag belonged to Jefferson—will prevent Jefferson from having a fair trial.

However, since *Zafiro*, the Seventh Circuit Court of Appeals has "consistently held that blame-shifting among co-defendants, without more, does not mandate severance." *Plato*, 629 F.3d at 650; *see also United States v. Andreas*, 23 F. Supp.2d 835, 847 (N.D. Ill. 1998). And, through jury instructions and the Court's careful management of the trial, any prejudice resulting from Ramirez's conflicting defense and from the effect of Ramirez's counsel presenting an additional "attack" on

Jefferson would be minimal and insufficient to warrant severance. The "second prosecutor" concern is not a basis for severance in this case.

## CONCLUSION

Notwithstanding his various arguments, Jefferson has not shown the potential for any specific prejudice sufficient to overcome the preference in the federal system that codefendants be tried together. Accordingly, the Court hereby **DENIES** Defendant's Motion to Sever [DE 78].

SO ORDERED this 30th day of November, 2018.

/s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT